## COMMONWEALTH *vs.* JOSEPH ROBIDEAU.

Bristol. November 9, 2012. - March 18, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Homicide. Practice, Criminal,* Capital case, Postconviction relief, New trial, Assistance of counsel, Instructions to jury, Presumptions and burden of proof.

This court concluded, as a threshold matter, that a criminal defendant's appeal from the denial of his motion for new trial, arising from his 1964 conviction of murder in the first degree, did not constitute a direct appeal but, rather, an appeal from a collateral attack on a final conviction, where there was no merit to the defendant's argument that his trial counsel was ineffective in failing to adequately consult with him regarding the viability of a direct appeal. [701-703]

At a 1964 murder trial, neither the judge's instruction regarding the presumption of innocence nor the defendant's appearance at trial in shackles and under armed guard amounted to structural error or created a substantial risk of a miscarriage of justice. [703-705]

INDICTMENTS found and returned in the Superior Court on February 5, 1964.

A motion for new trial, filed on May 5, 2009, was heard by *D. Lloyd Macdonald,* J.

*Aziz Safar* for the defendant.

*Tara L. Blackman,* Assistant District Attorney, for the Commonwealth.

CORDY, J. On July 2, 1964, the defendant was convicted by a jury of one count of murder in the first degree, G. L. c. 265, § 1; and two counts of armed robbery, G. L. c. 265, § 17, for his role in the robbery of a Fall River bar that resulted in the shooting death of its owner, Jean Thibeault. On his conviction of murder in the first degree, the jury recommended that the death penalty, then in effect, not be imposed, and the defendant was sentenced to life in prison. He also received lesser concur-

rent sentences on his armed robbery convictions.[1] He did not appeal.

Nearly forty-five years later, the defendant filed a motion for a new trial in the Superior Court, pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), collaterally attacking his conviction. Following an evidentiary hearing, a judge denied the defendant's amended motion[2] without prejudice and granted the defendant leave to renew that motion subject to the outcome of the appeal of his codefendant, John F. Petetabella, from the denial of a similar motion for a new trial. See *Commonwealth* v. *Petetabella*, 459 Mass. 177 (2011) (*Petetabella*). Rather than awaiting the outcome of that case, the defendant appealed the denial of his motion, and the case was docketed in this court as a direct entry of an appeal from a conviction of murder in the first degree. We subsequently affirmed the denial of Petetabella's motion for a new trial. *Id.* at 193.[3]

The defendant's arguments track those made in *Petetabella, supra.* His primary contention is that his trial counsel was ineffective for not pursuing a direct appeal and, consequently, that this court should treat the claims of error he now raises as if raised on direct appeal, and afford them the more favorable standard of review under G. L. c. 278, § 33E, to determine if there was a substantial likelihood of a miscarriage of justice. The defendant also contends that the trial judge gave an erroneous "presumption of innocence" instruction, that he was improperly shackled during the trial, and that these amount to structural errors requiring automatic reversal of his convictions. We conclude that our decision in *Petetabella* is controlling in

---

[1]The defendant's codefendants, John F. Petetabella and Gerald Sousa, were also found guilty of murder in the first degree, multiple counts of armed robbery, and assault and battery by means of a dangerous weapon. See *Commonwealth* v. *Petetabella*, 459 Mass. 177, 178 & nn.2-3 (2011) (*Petetabella*); *Commonwealth* v. *Sousa*, 350 Mass. 591, 593 (1966). They each received a life sentence. Of the three men, only Sousa filed a direct appeal, and this court affirmed his convictions. *Commonwealth* v. *Sousa, supra* at 599.

[2]Following his initial motion for a new trial, filed pro se, the defendant was assigned counsel who filed an amended motion for a new trial and a supplemental memorandum of law.

[3]We decided *Petetabella, supra,* on March 30, 2011. The defendant filed a notice of appeal of the denial of his motion for a new trial on March 24, 2011.

the present appeal and affirm the judge's denial of the defendant's amended motion for a new trial.

*Background.* The facts underlying the armed robberies and murder for which the defendant was found guilty are set out in detail in our decisions affirming the convictions of Petetabella and Gerald Sousa. See *Petetabella, supra* at 179-181; *Commonwealth* v. *Sousa*, 350 Mass. 591, 592-594 (1966). Essentially, early in the morning of December 28, 1963, after a night of heavy drinking, the defendant, Petetabella, and Sousa entered Padden's Cafe, a Fall River bar, with the intention of committing a robbery. After learning that the money was locked up for the night, the defendant held a female patron at knifepoint, while Petetabella executed Thibeault with a single shot through the back and Sousa unsuccessfully attempted to shoot another bar employee. The men took several wallets and fled the bar.[4]

The defendant testified at trial, admitting to his role in the robbery, including striking the female patron he held at knife point, but claiming that Sousa was not present. The defendant also testified about his difficult childhood and his substance abuse.[5] His defense was lack of criminal responsibility, and medical experts (one called by the defense and one by the Commonwealth) testified at trial. Both experts testified that the defendant knew the difference between right and wrong, but the expert for the defense opined that he could not control his impulses.

*Discussion.* 1. *Standard of review.* The defendant urges us to consider the errors he alleges in his motion for a new trial as if they had been raised in a direct appeal of his convictions (and not the appeal of a failed collateral attack) because his trial counsel was ineffective in failing to adequately consult with him regarding the viability of such an appeal. The motion judge rejected this argument. We review the judge's denial of the mo-

---

[4]There was also testimony that prior to robbing the bar, the defendant and Petetabella, both armed with firearms, robbed three employees of a nearby market. The defendant admitted to participating in this armed robbery in his testimony at trial.

[5]The defendant was called as a witness at trial by counsel for his codefendant Sousa. The defendant's trial counsel strongly urged him not to testify, but the defendant did so in spite of his counsel's objections, which were placed on the record.

tion for a new trial on this particular issue "only to determine whether there has been a significant error of law or other abuse of discretion."[6] *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986).

The defendant alleged in an affidavit filed in support of his motion that following the trial, his counsel "told [him] that any direct appeal on [his] behalf would be meritless because [he] took the witness stand at [his] trial," and that but for this advice, "[he] would have taken an appeal." The defendant elaborated on this in his testimony at the evidentiary hearing, recalling that he and his counsel met in a room after the verdict to talk, and that his counsel (now deceased) told him, "By going on the stand and admitting to the crime and everything . . . you have no appeal now." The defendant also testified that his counsel told him that what he had done "was like pleading guilty," leaving him with "no options." Defense counsel also apparently told the defendant that if there were changes (undescribed) in the law that could help in the case, he would "come up and see [him] and let [him] know."

We rejected an identical argument in *Petetabella, supra* at 181, 183, based on a similar assertion regarding his attorney's advice.[7] The motion judge in that case was the same judge who denied the defendant's motion in this case, and he heard both Petetabella's and the defendant's testimony. In his memorandum and order denying the defendant's motion, the judge found that "the substance of each of the issues the defendant raises is identical to those raised in . . . Petetabella's motion for [a] new trial." He then affirmed that his conclusions in denying Petetabella's motion were "correct," and that the same result "must pertain here."[8] In his memorandum and order on Petetabella's motion, the judge concluded that there were two related reasons

---

[6]"When . . . the motion judge did not preside at trial, we defer to that judge's assessment of the credibility of witnesses at the hearing on the new trial motion, but we regard ourselves in as good a position as the motion judge to assess the trial record." *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986), citing *Commonwealth* v. *Ellison*, 376 Mass. 1, 16-17 (1978).

[7]Petetabella claimed that his attorney told him that because he testified and admitted to the crimes, there was no basis to appeal.

[8]The judge's denial of the defendant's motion occurred before this court affirmed his decision on Petetabella's motion for a new trial.

why an appeal was not taken. First, by the jury recommending against the death penalty, Petetabella had, in substance, "won," and there was no tangible benefit to be gained in an appeal.[9] Second, if such an appeal were to prevail, Petetabella would have to face the risk on retrial that the next jury would not recommend that he be spared execution.

We understand the motion judge's conclusions regarding the circumstances attendant to there being no direct appeal in Petetabella's case and the defendant's case to be the same[10] — that such appeals would have had little merit in light of both Petetabella and the defendant having admitted to the crimes in their trial testimony; that it was not manifestly unreasonable for their attorneys to recommend that they not appeal where, if they were to prevail, they would face the risk of the death penalty at a retrial; and that both Petetabella and the defendant reasonably accepted their attorneys' advice.

As we concluded in *Petetabella, supra* at 183, in these circumstances, trial counsel was not ineffective even if measured by the standard we adopted ten years after the trial, in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) ("whether there has been serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer"). Consequently, we conclude that the defendant's case is not here on direct appeal but as an appeal from a collateral attack on a final conviction. See *Petetabella, supra* at 183. Therefore, we review his remaining substantive claims of error to see whether they are structural in nature and, if not, whether they create a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Randolph*, 438 Mass. 290, 294 (2002), quoting *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

2. *Claims of structural error.* The defendant claims that two

---

[9]Like the defendant, Petetabella raised a criminal responsibility defense at trial and testified to his involvement in the crimes.

[10]The defendant contends that, as compared to Petetabella, who shot Thibeault, he played a less culpable role in the commission of the charged offenses. According to the defendant, this factual consideration would have reduced the likelihood that he would receive the death penalty on retrial. Although the correctness of the defendant's conclusion is debatable, what is not debatable is the fact that the risk would have been revived.

of the errors alleged are structural in nature.[11] First, he argues that the trial judge's instruction regarding the presumption of innocence was structural error because it suggested to the jury that the defendant had the burden of proving his innocence once the Commonwealth began presenting its case. However, in *Petetabella, supra* at 184, we specifically stated that "an error in a presumption of innocence instruction . . . does not rise to the level of a structural error." None of the additional considerations cited by the defendant gives us reason to revisit our conclusion. We therefore reject the defendant's argument on this point.

Second, the defendant argues that the fact that he was placed in shackles and under armed guard throughout the trial was structural error because it undermined the presumption of his innocence and violated his right to due process of law under the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. In support of his argument, the defendant cites *Deck* v. *Missouri*, 544 U.S. 622, 628-629 (2005) (*Deck*) (Fifth and Fourteenth Amendments prohibit use of physical restraints visible to jury absent discretionary decision by trial judge that they are justified by State interest specific to particular trial). In *Petetabella, supra* at 187, we declined to decide whether *Deck* applied retroactively. However, assuming that it did, we concluded that, in light of the customs at the time concerning court room security and "given [Petetabella's] execution-style killing of [Jean Thibeault]," the judge did not abuse his discretion in denying the motion for new trial on this ground.[12] *Petetabella, supra.* Here, we similarly conclude that the defendant's shackling in front of the jury did not amount to structural error in light of the clear security risk he posed.[13] Thus, we decline to diverge from our analysis in *Petetabella.*

---

[11]"Structural error is a particular type of error. Generally, it is error that 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' . . . Structural errors are fundamental defects in a trial." *Commonwealth* v. *Hampton*, 457 Mass. 152, 163 (2010), quoting *Washington* v. *Recuenco*, 548 U.S. 212, 218 219 (2006).

[12]Although not specifically stated, implicit in our decision in *Petetabella, supra* at 187, is the assumption that the shackling of a defendant does not amount to structural error.

[13]The defendant not only held another patron at knifepoint while the shooting occurred, but also robbed three market employees at gunpoint earlier that night.

We are left to consider whether these two errors, although not structural, nevertheless create a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Randolph, supra*. "A substantial risk of a miscarriage of justice exists when we have 'a serious doubt whether the result of the trial might have been different had the error not been made.' " *Id.* at 297, quoting *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002). For the reasons discussed in *Petetabella, supra* at 184-185, 187, we conclude that neither the instruction nor the shackling issues created a substantial risk of a miscarriage of justice.[14] Consequently, the judge's denial of the defendant's motion for a new trial was not manifestly unjust, nor was the trial infected with prejudicial constitutional error.

*Conclusion.* We conclude that the defendant's appeal is identical in all respects to that of his codefendant in *Petetabella, supra*, which is dispositive. Accordingly, we affirm the denial of the defendant's motion for a new trial.

*So ordered.*

---

[14]In addition to the arguments he makes in the appeal of the denial of his motion for a new trial, the defendant also raised the following issues in his amended motion for a new trial: (1) whether the judge impermissibly excluded women from the jury; (2) whether the continuous noise from outside the court room deprived him of a fair trial; (3) whether the jury instructions violated the defendant's due process rights by shifting the burden of proof on the issues of intent, malice aforethought, and intoxication onto the defendant; (4) whether the jury instructions improperly placed the burden on the defendant to prove that his statement to police was voluntary; and (5) whether the defendant voluntarily decided to testify. In this appeal, the defendant either failed to raise or conceded these additional points (based on our holding in *Petetabella*) in his brief, and we do not consider them sua sponte.