NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1215                                          Appeals Court

COMMONWEALTH  vs.  JUSTIN C. GASTON.

No. 12-P-1215.

Suffolk.     May 7, 2014. – October 31, 2014.

Present:  Cypher, Kafker, & Hanlon, JJ.


Controlled Substances.  Firearms.  Constitutional Law, Conduct
     of government agents.  Due Process of Law, Disclosure of
     evidence, Conduct of prosecutor.  Practice, Criminal, New
     trial, Disclosure of evidence, Conduct of government
     agents, Conduct of prosecutor.  Evidence, Disclosure of
     evidence, Firearm, Certificate of drug analysis.


     Complaints received and sworn to in the Dorchester Division
of the Boston Municipal Court Department on June 25 and July 3,
2008.

     After transfer to the Central Division of the Boston
Municipal Court Department, the cases were tried before Mark H.
Summerville, J., and a motion for a new trial was heard by
Eleanor C. Sinnott, J.


     William M. White, Jr., for the defendant.
     Vincent J. DeMore, Assistant District Attorney, for the
Commonwealth.


     CYPHER, J.  The defendant, Justin Gaston, appeals from the

denial of a motion for new trial and from his convictions by a

jury on two counts of carrying a firearm without a license, G. L. c. 269, § 10(a); one count of unlawful possession of ammunition, G. L. c. 269, § 10(h); one count of possession of a class B substance with the intent to distribute ("crack" cocaine), G. L. c. 94C, § 32A; and one count of unlawful possession of a loaded firearm charged in a separate complaint, G. L. c. 269, § 10(n).[1,2] The defendant argues that the evidence was insufficient to support the charge of possession with intent to distribute and the firearms and ammunition charges. The defendant also argues that his motion for new trial, which was based on a claim of newly discovered evidence and prosecutorial nondisclosure regarding problems in the William A. Hinton State Laboratory Institute (Hinton lab) involving chemist Annie Dookhan, should have been allowed. We conclude that the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt on all of the charges but that the motion for new trial should have been allowed as to the drug charge.

---

[1] We note that the defendant incorrectly identified the loaded firearm charge in his brief as simple possession and the Commonwealth incorrectly identified the counts on which the defendant was convicted.

[2] The defendant's direct appeal does not appear to have been consolidated with his appeal from the denial of the motion for new trial, but because the parties have addressed both appeals in a single brief, we will respond in a single decision.

Facts.  Police officers in the Boston drug control unit obtained a search warrant for an apartment in a six-family building located in Dorchester.  They executed the warrant on June 18, 2008, and initially tried to gain entry by knocking loudly on the apartment door and announcing their presence.  The police heard the sound of people "scurrying" inside the apartment, but no one answered the door.  Using a battering ram, the police struck the door eight or nine times until it finally gave way.

Upon gaining entry, the defendant fled over a balcony, dropped to the ground and ran.  The defendant, a six-foot, three-inch man weighing about 210 pounds, was readily distinguishable from a second male suspect, who was about five feet tall, and who was also running from the rear of the building about ten feet away from the defendant.[3]  The defendant attempted to jump over a fence but became entangled and fell.  To free himself, the defendant pulled off a headphone, the wire of which had been hooked on the fence, and continued to run.  He was apprehended by one of the officers who were chasing him.

The police retraced the defendant's path and located a bag containing what appeared to be ten rocks of crack cocaine individually packaged in small plastic bags and the headphones

---

[3] The second suspect was not apprehended.

the defendant had been wearing when he became hooked on the fence.

The apartment where the search warrant was executed consisted of five rooms, including a living room, two bedrooms, and a kitchen. Police located Joel Moore in the smaller bedroom, which contained a day bed; it was in disarray with clothes scattered all over and piled on the bed. The room also contained a bureau, on top of which was a black backpack. An officer unzipped the backpack and saw a handle and trigger guard of what was later identified as a Taurus nine millimeter semiautomatic pistol (Taurus pistol). The officer also found two pieces of mail from the Social Security Administration addressed to the defendant at a different address in Dorchester, a letter addressed to Eddie Gaston, a box of plastic sandwich bags, a loaded High Point .380 caliber semiautomatic pistol (High Point pistol), a single loose round of ammunition, and assorted items of very large male clothing. The officer also found a scale with residue on it, a mirror, and a razor blade in that bedroom.

In the second, larger bedroom, another officer found one live round of .380 ammunition and a firearm barrel cleaning rod in the top drawer of a bureau. He also recovered mail, a money order, and identification in the name of Cedric Motin, the apartment lessee; $151 in United States currency; and a spent

shell casing.  The bedroom also contained a bed and a closet with clothing.  Motin, who is about five-feet, six-inches tall and weighs about 140 pounds, returned to the apartment during execution of the warrant and spoke to the police.

The Taurus pistol, the High Point pistol, both magazines, and all of the ammunition were examined by the police for fingerprints.  Five latent prints were recovered from those items.  Three prints were recovered from the Taurus pistol but were of insufficient quality to compare them to anyone else's prints.  Two latent prints were recovered from the magazine of the Taurus pistol, and one of those prints was of sufficient quality to exclude the defendant and match the print to an individual named Dashawn Hinton.

Discussion. 1. Motion for new trial.  The defendant argued in his motion for new trial that his inability to access Dookhan's pervasive and egregious misconduct until after his trial and the prosecutor's failure to disclose the misconduct prevented him from challenging her role as the confirmatory chemist.  The motion judge, who was not the trial judge, reasoned that because Dookhan was merely the confirmatory chemist there was no substantial risk that the jury would have reached a different conclusion had they been made aware of her misconduct because the primary chemist had independently tested the same sample and given her opinion at trial that the

substance was cocaine. The defendant appeals claiming, in essence, that his motion for new trial should have been allowed on the common-law ground of newly discovered evidence and the constitutional claim of prosecutorial nondisclosure. See Commonwealth v. Scott, 467 Mass. 336, 359 (2014).

As is often repeated, we review an appeal from the "denial of a motion for new trial 'to determine whether there has been a significant error of law or other abuse of discretion.'" Commonwealth v. Rodriguez, 467 Mass. 1002, 1004 (2014), quoting from Commonwealth v. Robideau, 464 Mass. 699, 701-702 (2013). "Where, as here, a judge hearing a motion for new trial was not the trial judge, we regard ourselves in as good a position as the motion judge to assess the trial record." Commonwealth v. Laguer, 448 Mass. 585, 593 (2007) (citation omitted). In addition, when a new trial motion is constitutionally based, as is one of the claims at issue here, "this court will exercise its own judgment on the ultimate factual as well as legal conclusions." Commonwealth v. Salvati, 420 Mass. 499, 500 (1995), quoting from Commonwealth v. Tucceri, 412 Mass. 401, 409 (1992).

After the briefs were submitted in this case, the Supreme Judicial Court issued a series of cases involving challenges to guilty pleas pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), on grounds that the pleas were entered

neither knowingly nor voluntarily as the result of misconduct by Dookhan. We know of no published decision in Massachusetts in which the appeal was from a conviction after trial, rather than from a guilty plea. The lead case in the recent spate of decisions, however, includes a lengthy discussion regarding challenges from a conviction after trial, which is instructive in analyzing the issues presented here.[4] See Scott, 467 Mass. at 358-362.

At the outset, the court in Scott detailed the method for testing illicit narcotics at the Hinton lab and Dookhan's role in those tests. Id. at 338-342. The court explained that Hinton lab protocols required two levels of testing on each substance submitted for testing. "Primary tests [were] simple bench top tests [that] have only moderate discriminatory power [to detect a specific substance] . . . . [S]econdary, or confirmatory, tests were conducted [with] sophisticated instrumentation [that] have high discriminatory power, and . . .

---

[4] Additionally, in four rescript opinions, the Supreme Judicial Court vacated the trial judge's decision on the defendant's motion to withdraw his guilty plea, concluded that the first prong of the analysis in Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006), had been established, and remanded each case to allow the trial judge to consider whether the defendant can show a reasonable probability that had he known of the allegations against Dookhan at the time of his plea, he would have refused to plead guilty and insisted on going to trial. See Commonwealth v. Rodriguez, supra; Commonwealth v. Davila, 467 Mass. 1005 (2014); Commonwealth v. Bjork, 467 Mass. 1006 (2014); Commonwealth v. Torres, 467 Mass. 1007 (2014).

produce instrument-generated documentation of test results."
Id. at 340 (quotations omitted).  When testing of a sample was
complete, a certificate of drug analysis was prepared and signed
by the primary chemist and the secondary or confirmatory chemist
on one line labeled "Assistant Analyst" and their signatures
were notarized, typically by another chemist.  Id. at 340-341.
"Although it is assumed that on the line labeled 'Assistant
Analyst' the signature further to the left is that of the
primary chemist and the signature further to the right is that
of the secondary chemist, nothing on the face of the certificate
confirms that assumption."  Id. at 353 n.9.  In this case,
Dookhan was the confirmatory chemist.

In addition, the Scott court specifically identified
Doohkan's wrongdoing.  In her capacity as a primary chemist,
Dookhan lied about having tested all the samples in a group,
when she had only tested a select few, and she converted
"negatives to positives."  As a secondary chemist she falsified
other chemists' initials on reports intending to verify the
proper functioning of the instrumentation and lied about having
verified the proper functioning of the instrumentation.  Id. at
341.  Her misconduct continued for years, and touched thousands
of cases that even she is unable to specifically identify.
Because her widespread conduct as a government agent had the
capacity to "undermine[] the very foundation of [a defendant's]

prosecution," id. at 348, the court aptly described it as "cast[ing] a shadow over the entire criminal justice system." Id. at 352. In response the court concluded that in each instance that Dookhan served as the assistant analyst either as the primary chemist or the confirmatory chemist, the "defendant is entitled to a conclusive presumption that egregious government misconduct occurred in the defendant's case."[5] Ibid.

Relying on the reasoning in Scott, it is clear that the initial requirements of both theories presented in this appeal have been established. With respect to the claim of newly discovered evidence, because the breadth and depth of Dookhan's misconduct was not uncovered until July, 2012, five months after the defendant's trial, we can readily conclude it is newly discovered. See Commonwealth v. Grace, 397 Mass. 303, 306 (1986) (evidence must "have been unknown to the defendant or his counsel and not reasonably discoverable by them at the time of trial"); Scott, 467 Mass. at 359. In addition, because there is no question that Dookhan, a government agent, affirmatively identified illicit substances that she had not properly tested,

---

[5] The Supreme Judicial Court has taken the view that Dookhan's wrongdoing in her roles as the primary and the confirmatory chemist was equally egregious. Examination of the briefs and record in the following cases indicates that Dookhan was either the primary or confirmatory chemist in all of them: Scott, 467 Mass. at 346 (primary chemist); Rodriguez, 467 Mass. 1002 (primary chemist); Davila, 467 Mass. 1005 (confirmatory chemist); Bjork, 467 Mass. 1006 (primary chemist); Torres, 467 Mass. 1007 (confirmatory chemist).

those representations are exculpatory because they undermined the foundation of the defendant's prosecution and, in turn, triggered the requirement of prosecutorial disclosure.  See Tucceri, 412 Mass. at 412 (prosecution obligated to deliver exculpatory evidence to defense); Commonwealth v. Martin, 427 Mass. 816, 824 (1998) ("A prosecutor's obligations extend to information in possession of a person who has participated in the investigation or evaluation of the case and has reported to the prosecutor's office concerning the case"); Commonwealth v. Lykus, 451 Mass. 310, 327 (2008).  See generally Scott, 467 Mass. at 347-348.

Thus, the focus in this appeal is the second part of the analysis in each claim, specifically prejudice or materiality. Id. at 360.  In either a common-law claim of newly discovered evidence or a constitutional claim of prosecutorial nondisclosure, the defendant must demonstrate essentially the same requirement, namely that there is a "substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial," ibid., quoting from Grace, 397 Mass. at 306.  See Tucceri, 412 Mass. at 406, 413.  "The judge need not be convinced that the jury's verdict would have been different but rather that the evidence would have been a 'real factor' in the jury's deliberations."  Scott, 467 Mass. at 360. See Tucceri, 412 Mass. at 414 ("It is enough that, on a full and

reasonable assessment of the trial record, the absent evidence would have played an important role in the jury's deliberations and conclusions, even though it is not certain that the evidence would have produced a verdict of not guilty").  This requirement has been equated with the second prong of "the Saferian ineffective assistance of counsel standard."  Scott, 467 Mass. at 360, quoting from Tucceri, 412 Mass. at 406, 413.

Here, it is clear that Dookhan's role as the confirmatory chemist was significant.  Only the confirmatory chemist uses sophisticated instrumentation in the testing process that has both a high discriminatory power to identify the substance and the ability to produce instrument-generated documentation of test results.  Scott, 467 Mass. at 340-341.  The simple bench top tests conducted by the primary chemist provide neither safeguard.  Ibid.  Without the secondary test, only the results of the simple bench top tests conducted by the primary chemist are available.  By definition these tests are less discriminatory, and it is far from clear that such tests are sufficiently reliable to be admitted.  If admitted, standing alone, discriminatory weaknesses provide substantial fodder for cross-examination.  See Commonwealth v. Fernandez, 458 Mass. 137, 147-151 (2010).  Here, proof of Dookhan's wrongdoing as it related to the defendant's case provides its own shadow of reasonable doubt about the nature of the substances tested.  In

sum, we have no difficulty concluding that evidence of the "'particularly pernicious' government misconduct" by Dookhan would have been a real factor in the jury's deliberation on the narcotics charges.  Scott, 467 Mass. at 347, quoting from Ferrara v. United States, 456 F.3d 278, 291 (1st Cir. 2006).

2.  Sufficiency of the evidence.  a.  The drugs.  The defendant argues that there was insufficient evidence to establish that he intended to distribute the ten rocks of crack cocaine that were found shortly after his apprehension and that the most the Commonwealth could prove was possession.  Applying the familiar standard articulated in Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), we conclude that the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of each element of the offense beyond a reasonable doubt.  Here, the quantity of the drugs, the packaging of the drugs, and the paraphernalia, such as the scale and the particularly incriminating box of plastic sandwich bags found in the backpack, bolstered by the defendant's attempted flight and the absence of any smoking paraphernalia either in the apartment or in the defendant's possession, provided ample evidence for the trier of fact to conclude that the defendant was not merely in possession of the drugs, but intended to distribute them.  See Commonwealth v. Little, 453 Mass. 766, 771-772 (2009); Commonwealth v. Sepheus,

468 Mass. 160, 167-168 (2014); Commonwealth v. Montalvo, 76 Mass. App. Ct. 319, 324, 327 (2010).

To the extent the defendant suggests the evidence is lacking because no expert police testimony was offered, the argument fails to recognize that such testimony is not required.[6] See Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 427-428 (1985) (no expert testimony was offered and court made clear intent to distribute is factual question which may be proved by circumstantial evidence); Commonwealth v. Gonzalez, 47 Mass. App. Ct. 255, 257-259 (1999) (same).

b. The guns and ammunition in the backpack. The defendant argues that because Moore was in the smaller bedroom where the backpack was found, only conjecture or guesswork would permit a fact finder to choose between two alternative propositions, namely, that Moore had stuffed the guns (and presumably the ammunition) into the defendant's backpack when he heard the police approaching, or that the guns belonged to the defendant. The difficulty with the claim is that the alternatives are not equally supported by the evidence.

Apart from Moore's presence in the room with the zipped backpack, there is no evidence that ties him to it or the contents therein. Police testimony is devoid of any evidence

---

[6] The trial judge did not permit the Commonwealth to elicit such testimony from the police officer.

that Moore was moving quickly or even near the backpack when they entered the room, and he was not arrested or charged in this case.  Moreover, one gun was buried at the bottom of the backpack, underneath clothing, and the other placed on the top of the other contents.  It is hardly reasonable to think that Moore had the time, the interest, or even the motive to collect and stuff into the backpack all the items found therein, or that he would have buried only one of the weapons and left the other sticking out near the top.  In any event, the evidence was sufficient to demonstrate that the backpack and its contents -- which included letters addressed to the defendant at the address he gave to the booking officer in this case and clothing that could have been the size he wore -- belonged to him and that he left it behind in his rush to escape apprehension by the police.

Conclusion.  The portion of the order denying the defendant's motion for new trial on the drug charge is reversed, the judgment thereon is reversed, and the verdict set aside. The portion of the order denying the motion for new trial on the firearms and ammunition charges is affirmed, as are the judgments on those charges.

So ordered.