NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1938                                    Appeals Court

COMMONWEALTH  vs.  TERRANCE HAMPTON.

No. 13-P-1938.

Hampden.      January 13, 2015. - September 2, 2015.

Present:  Trainor, Rubin, & Sullivan, JJ.

Practice, Criminal, New trial, Assistance of counsel, Witness.
    Constitutional Law, Assistance of counsel.  Due Process of
    Law, Assistance of counsel.

Indictments found and returned in the Superior Court
Department on August 12, 2008.

Following review by this court, 82 Mass. App. Ct. 1111
(2012), a motion for a new trial was heard by Constance M.
Sweeney, J.

Stephanie A. Hoeplinger for the defendant.
Cynthia Cullen Payne, Assistant District Attorney, for the
Commonwealth.

SULLIVAN, J.  Following an order of remand,[1] a judge of the

Superior Court held an evidentiary hearing on the defendant's

_____

[1] See Commonwealth v. Hampton, 82 Mass. App. Ct. 1111
(2012).

motion for a new trial on the ground of ineffective assistance of trial counsel. The defendant had been convicted of assaulting a correctional officer. See G. L. c. 127, § 38B. His defense at trial was that the correctional officer used excessive force and was the first aggressor. At issue in the motion and on appeal is whether counsel was ineffective in failing to interview a fellow inmate who claimed that he had observed a portion of the altercation, and that the defendant had not been the first aggressor. The motion judge, who was also the trial judge, denied the motion on the basis that counsel made a reasonable strategic decision, and that the witness was not credible. We reverse.

1. Background. a. Pretrial investigation by defense counsel. The defendant was charged with assault and battery on a correctional officer at the Hampden County house of correction in Ludlow. Before the trial, the defendant told trial counsel that a fellow inmate, Deven Gallop, witnessed the events in question. Trial counsel filed a pretrial discovery motion to name any persons present during the incident. The Commonwealth provided a list with the names of the correctional officers, but it did not include Gallop's name. Trial counsel accepted the Commonwealth's representation. Neither she nor her investigator interviewed Gallop or visited the intake unit where the incident took place.

Before jury empanelment, the defendant moved to discharge trial counsel, asserting that she failed to investigate the potential eye witness and was thus ill-prepared to present his defense.  The motion was denied and the case proceeded to trial.

b.  The trial.  At trial, the Commonwealth's theory was that the defendant engaged in an unprovoked attack.  The defendant claimed that the correctional officer used excessive force to which he responded in self-defense.

Three correctional officers testified regarding the incident.  The defendant was located within an intake unit where inmates waiting to go to court were held.  Inmates were allowed to change from prison clothes to civilian clothes before going to court, but were required to submit to a strip search in a "strip room."  The incident took place in the strip room as the defendant, whose court date had been cancelled, was preparing to go back to his cell.  Officer Barcomb testified that he told the defendant to put some personal papers down.  Barcomb then picked up the papers.  The defendant told him not to read them, grabbed the papers out of his hands, and punched Barcomb repeatedly.  Two correctional officers testified that the defendant punched Barcomb with multiple blows.  One testified that the defendant yelled, "Do you know who the fuck I am?"

The defendant testified that he went into the strip room and began to disrobe.  When Barcomb picked up the papers, Gallop

asked the officer four or five times over two to three minutes not to read the papers. When the officer did not stop reading the papers, the defendant snatched the paperwork from Barcomb's hand. The officer told the defendant to turn and put his hands on the wall and he complied. Barcomb then pushed him three times from the rear; his shins were pressed against a bench. After the third push, the defendant turned around. Barcomb's arm was raised and the defendant then swung his fist at the officer. Barcomb blocked the blow, they both fell to the ground, and Barcomb hit him in the eye.

After closing arguments in which the Commonwealth stressed the credibility of the three officers' testimony and the defendant's lack of credibility, the defendant was convicted of assault and battery upon a correctional officer.

c. Motion for a new trial. The defendant filed a motion for a new trial pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). The motion contained an affidavit from Gallop stating that he had seen the beginning of the altercation, that he saw the officers push the defendant three or four times, that he may have seen an officer take a swing at the defendant, and that he would have testified at trial upon request. The motion was denied on the papers. The denial of the defendant's motion for a new trial was subsequently vacated and the matter was remanded for an evidentiary hearing on the

issue whether counsel's decision not to pursue Deven Gallop as a
defense witness constituted ineffective assistance.
Commonwealth v. Hampton, 82 Mass. App. Ct. 1111 (2012).

Gallop's testimony at the hearing on the motion for a new
trial may be summarized as follows.  Gallop was Hampton's
codefendant and was present in the intake area with the
defendant that day.  Gallop was in a holding cell approximately
five feet across from the strip room.  The door to the strip
room was ajar for a few seconds.  He witnessed the confrontation
between the defendant and the correctional officer near the
entrance of the intake room through a window in the steel door
of his holding cell.  When the intake room door was open, Gallop
saw an officer push the defendant three to four times and may
have seen the officer swing at him as well.  He also heard
someone say, "Why are you hitting me?" and another person say,
"Stop resisting."

Gallop's credibility was in dispute.  He was held in a cell
that had a steel door with windows.  Gallop described the window
as portrait shaped, over two feet wide and three feet high.  The
Commonwealth introduced photographs of the cell door showing
that there were two vertical windows four inches wide and thirty
inches long.  The Commonwealth also offered the testimony of one
of the correctional officers that the windows had always been in

that configuration.  When shown the pictures, Gallop did not change his testimony.

Gallop also stated that the incident occurred at the front of the strip room, just inside the door.  He conceded that if the incident had occurred near the back of the room, as the defendant had testified at trial, he would not have been able to see what happened.  On cross-examination, Gallop stated that the defendant was not pushed up against the wall, was not pushed up against a bench, and that there was no bench in the intake room.  This testimony was at odds with that of the defendant and with that of the correctional officers, who testified at trial and at the evidentiary hearing that the incident took place while the defendant was standing against the bench with his hands on the wall.

Lieutenant Carter, a correctional officer, testified that in his nineteen years at the correctional facility, the bench in the strip room was located against the back wall, near the shower area and the window to the property room.  Upon hearing loud noises from within the strip room, Carter knocked on the door, and a sergeant, who was in the room, opened the door which then closed behind him.  Carter saw the defendant snatch papers out of Barcomb's hands and heard the officer tell the defendant to place his hands on the wall.  He saw the defendant put one hand on the wall and then start swinging "closed fist punches"

at Barcomb's head.  Carter maintained that the door was not open during the incident.

As noted previously, defense counsel testified that she relied on the Commonwealth's representation that no one else saw the incident.  She had never been to the Ludlow house of correction, was unfamiliar with the lay out of the strip cells, and declined to interview Gallop even though the defendant had given her his name.  When asked if there was a strategic reason for her decision not to interview Gallop, she stated that she "relied on the information provided by the Commonwealth," because the incident occurred in the confines of a cell in an enclosed area.

The motion judge concluded that trial counsel was not ineffective because she made a reasonable strategic decision not to interview or call Gallop as a witness.  The judge also found that trial counsel's investigation revealed that the incident occurred at the back of the intake room, and therefore, Gallop did not witness the events because it would have been impossible to do so, and it would have been poor strategy to call a witness whose testimony conflicted with that of the defendant.  She further found that Gallop's testimony at the evidentiary hearing was not credible for three reasons:  Gallop was (1) biased because he was a codefendant, (2) "at times self-contradictory on matters of importance," and (3) "inconsistent with

significant credible evidence."  Consequently, she denied the defendant's motion for a new trial.

2.  Discussion.  When assessing a claim of ineffective assistance of counsel, we examine the question under our traditional two-prong test stated in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974):  whether there has been "serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence."  Commonwealth v. Egardo, 426 Mass. 48, 52 (1997).  See Commonwealth v. Alcide, 472 Mass. 150, 157 (2015).  The defendant asserts that the judge erred in concluding that counsel made a reasonable strategic decision not to call Gallop on the basis that trial counsel did not conduct any investigation of Gallop's testimony, and Gallop's credibility was a matter for the jury.  We agree.

a.  Duty to investigate.  Tactical decision-making by counsel will be considered ineffective if "manifestly unreasonable when made."  Commonwealth v. Martin, 427 Mass. 816, 822 (1998).  Defense counsel had an affirmative obligation under State and Federal law "to conduct an independent investigation of the facts."  Commonwealth v. Baker, 440 Mass. 519, 529

(2003).  See Saferian, supra at 96; Alcide, supra at 169;
Strickland v. Washington, 466 U.S. 668, 690 (1984).  This duty
exists because the Sixth Amendment right to counsel is a
cornerstone of a fair trial.  See id. at 685.  "[A] fair trial
is one in which evidence subject to adversarial testing is
presented to an impartial tribunal for resolution of issues
defined in advance of the proceeding."  Ibid.

Here, trial counsel candidly acknowledged that she took the
Commonwealth at its word and conducted no investigation of
Gallop's observations or of the holding area.[2]  The failure to
investigate "undermined the proper functioning of the
adversarial process."  Id. at 686.  Until counsel "commenced
such an investigation, [she] simply had no way of making a
reasonable tactical judgment."  Baker, supra.  The judge's
effort to supply a rationale for counsel's decision, based on

---

[2] The judge's factual finding that counsel made a strategic
decision was not supported by the record.  The judge found that
counsel's decision was based on her understanding that the
incident occurred at the back of the room out of sight of
Gallop.  Trial counsel offered no testimony to this effect at
the evidentiary hearing.  She had no basis for evaluating what
Gallop could and could not see at the back of the room, since
she had no familiarity with the configuration of the holding
cells and the strip room.  When the defendant asked for
counsel's discharge before trial due to her failure to
investigate, counsel told the judge that she had declined to
interview the witness because the Commonwealth had told her
there were no other witnesses, and because the door to the strip
room had been closed.  Gallop's testimony put this assertion in
dispute.

information acquired after the fact, runs afoul of the requirement that the reasonableness of counsel's decision-making must be based on the decision "when made," and may not be "informed by what hindsight may reveal." Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015).

"'[S]trategic choices made after less than complete investigation are reasonable' only to the extent that 'reasonable professional judgments support the limitations on the investigation.'" Wiggins v. Smith, 539 U.S. 510, 533 (2003), quoting from Strickland, supra at 690-691. Compare Alcide, supra (complete failure to investigate), with Commonwealth v. Gorham, 472 Mass. 112, 118 (2015) ("This is not a case where counsel did no investigation"). Where the sole defense in the case was self-defense, it was manifestly unreasonable to fail to interview, or have an investigator interview, a potential percipient witness. See Alcide, supra (failure to interview witnesses pertinent to third party culprit defense); Commonwealth v. Garcia, 66 Mass. App. Ct. 167, 172 (2006) (defense counsel's failure to speak to a defense witness before trial was a "grievous shortcoming, especially in a case . . . where credibility was the sole issue"). Compare Commonwealth v. Montez, 450 Mass. 736, 758 (2008) (fully considered decision not to call three eyewitnesses, two of whom were interviewed by an investigator, and whose testimony would

have conflicted with the defense theory of the case was not ineffective); Commonwealth v. Morales, 453 Mass 40, 48-49 (2009) (counsel who interviewed the witness and made a decision not to call him because counsel found him not to be credible was not ineffective.)

b. Prejudice. The judge found, in the alternative, that Gallop's testimony was not credible, and therefore, the defendant was not deprived of a substantial ground of defense. Relying on Commonwealth v. Roberio, 428 Mass. 278, 281 (1998), the defendant contends that the question of the witness's credibility was for the jury. The Commonwealth contends that Gallop's testimony would not have assisted the defendant, and that the assessment of credibility is "traditionally a matter committed to the assessment of the motion judge."

In Roberio, the trial judge, hearing a motion for new trial, determined that counsel had been ineffective in failing to investigate and present an insanity defense. The judge ultimately concluded, however, that the defendant's expert witness was not credible, and that the defendant was not otherwise deprived of a substantial ground of defense. Ibid. at 281. The Supreme Judicial Court held that "where the trial judge has determined that defense counsel was ineffective in not raising a substantial available defense, the issue is limited to whether counsel's failure to raise a substantial available

defense was likely to have influenced the jury's conclusion." Ibid. If believed, the expert in Roberio likely would have influenced the jury's verdict. Therefore, "[i]t was not proper for the trial judge, having found ineffective assistance for failing to raise the defense, to then remove the issue of the credibility of that defense from the jury. . . . [T]he issue of credibility was for the jury, not the judge." Ibid.

Although this case stands on a somewhat different footing, the same analysis applies. Here the threshold question, whether self-defense was a substantial available defense, had already been decided. The defendant presented the defense at trial and the jury were instructed on self-defense. As is so often the case, the participants and the witnesses had "widely divergent versions of what transpired." Commonwealth v. Bior, 14-P-395 (2015). The case was a duel of credibility.[3] Gallop was the defendant's only corroborating witness, imperfect though his testimony may have been. His testimony was consistent with the overall defense, and while it deviated in the details, it did not undermine the theory of self-defense. Compare Montez, 450 Mass. at 758.

Viewing Gallop's testimony (as we must) "in the light most favorable to [the defendant]," that testimony, if believed,

---

[3] The prosecutor described the case in this manner at the hearing on the motion for a new trial.

could raise a reasonable doubt as to the defendant's guilt, because the testimony permitted the inference that the correctional officers were the first aggressors. Roberio, supra. See Strickland, 466 U.S. at 695. The proper analysis was not what the judge believed, but whether the testimony may have had "a significant impact on the jury's assessment of the evidence." Commonwealth v. Alvarez, 433 Mass. 93, 103 (2000).[4] As has been stated in analogous context, see infra, "[i]t is enough that, on a full and reasonable assessment of the trial record, the absent evidence would have played an important role in the jury's deliberations and conclusions, even though it is not certain that the evidence would have produced a verdict of not guilty." Commonwealth v. Tucceri, 412 Mass. 401, 414 (1992).[5]

To be sure, a jury could assess the inconsistencies between the defendant's testimony and Gallop's testimony, as well as their demeanor, and find that one or both accounts were a

---

[4] In the ordinary course, when reviewing the denial of a motion for a new trial for an abuse of discretion or error of law, we would afford considerable deference to the assessment of the motion judge, who was also the trial judge. "Because the defendant's claim was not assessed by the judge by the appropriate standard, we are constrained to rest our analysis on our independent review of the record." Alcide, supra at 159.

[5] This standard of review, applicable to motions for a new trial based on the failure to produce exculpatory evidence, has been described as "substantially the same as the Saferian ineffective assistance of counsel standard." Tucceri, supra at 413.

fabrication. A reasonable jury could also conclude, however, that in the close confines of a seven foot by fifteen foot cell in which the defendant and two correctional officers were present, a fracas spilled into view. "Discrepancies in any witness's testimony are inevitable. . . . Few witnesses are totally helpful." Commonwealth v. Hill, 432 Mass. 704, 718, 719 (2000) (counsel was ineffective in the constitutional sense in failing to call a percipient witness who claimed he saw someone enter or leave through the front door of the home, despite the testimony of the victim's wife that the front door was locked). We cannot say with certitude that better work could not have accomplished something more for the defense. See Baker, 440 Mass. at 529. See also Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977).

It is important to recognize, however, the close confines in which this case resides. We are dealing with the standard by which we review for prejudice under the second prong of Saferian, not the first.[6] This appeal is unlike the myriad cases

---

[6] For example, see Gorham, 472 Mass. at 118, in which counsel did conduct an investigation, but was, according to his investigator, "unable to develop any useable witnesses." The Supreme Judicial Court held that counsel was not ineffective, and the trial judge was permitted to discredit affidavits of witnesses whose affidavits directly contradicted, and in effect recanted, their statements to the police in assessing whether counsel was ineffective. Because counsel was not deemed ineffective, the court did not reach the issue of prejudice.

arising on motions for a new trial where the judge determines the credibility of witnesses with respect to issues having nothing to do with matters before the jury. See Commonwealth v. Scott, 467 Mass 336, 355 n.12 (2014).[7] This case is also materially different than recantation cases, where the judge determines the credibility of the recanting witness. See Commonwealth v. Ortiz, 393 Mass. 523, 537 (1984); Commonwealth v. Spray, 467 Mass. 456, 471-472 (2014). In recantation cases, when the trial has otherwise been determined to be fair, considerations of finality are strong. See Commonwealth v. Grace, 397 Mass. 303, 306-308 (1986). "If the rule were otherwise, the right of a new trial would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial court." Commonwealth v.

---

[7] For example, there are many ineffective assistance claims that by their nature involve factual determinations made by the judge. See, e.g. Commonwealth v. Bertrand, 385 Mass. 356, 364-365 (1982) (facts regarding the communication between counsel and client); Commonwealth v. Walker, 443 Mass. 213, 223-224 (2005) (reasonableness of counsel's investigation); Commonwealth v. Sylvain, 466 Mass. 422, 436 (2013) (adequacy of counsel's advice regarding immigration consequences of plea); Commonwealth v. Ray, 467 Mass. 115, 128 (2014) (adequacy of counsel's preparation and investigation); Commonwealth v. Kolenovic, 471 Mass. at 674 (assessing whether counsel's strategic decisions were manifestly unreasonable "when made"). Other motions for a new trial also focus on matters outside the jury's purview. See, e.g. Commonwealth v. Hubbard, 371 Mass. 160, 168-169 (1976) (competency to plead); Commonwealth v. Scott, supra (motion to withdraw guilty plea due to misconduct of laboratory employee); Commonwealth v. LaChance, 469 Mass. 854 (2014) (waiver by counsel, closed court room).

Robertson, 357 Mass. 559, 562 (1970), quoting from State v. Wynn, 178 Wash. 287, 289 (1934). See Commonwealth v. Rosario, 460 Mass. 181, 195 (2011) (newly discovered evidence must be material and credible). By contrast, an "ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are weaker and the appropriate standard of prejudice should be somewhat lower." Strickland, 466 U.S. at 694.

For this reason, Strickland rejected the prejudice standard applicable to other motions for a new trial, and assessed prejudice in a claim of ineffective assistance for failure to investigate by the same measure as cases in which a fair trial has been compromised by the failure to disclose exculpatory evidence. Ibid. The Supreme Judicial Court also has analyzed prejudice in the two types of cases in a similar fashion. However, our jurisprudence deviates from the Federal approach to prejudice in these two types of cases; we apply a common law standard of review that places particular emphasis on the role of the jury. See Tucceri, 412 Mass. at 412-413 (applying common law standard in in exculpatory evidence case). See also Scott, supra at 360; Commonwealth v. Gaston, 86 Mass. App. Ct. 568, 573 (2014). "We have justified this approach as 'preserv[ing], as well as it can in the circumstances, the defendant's right to the judgment of his peers,' since it ensures that the court's

analysis turns on 'what effect the omission might have had on the jury,' rather than on 'what . . . impact the . . . evidence has on the judge's personal assessment of the trial record." Commonwealth v. Cowels, 470 Mass 607, 623 (2015), quoting from Tucceri, supra at 411.

The concerns articulated in Cowels are the same as, and underscore, those articulated in Roberio -- the preservation of the jury's function. We therefore conclude that, under our common law standard, the judge erred in denying the motion for a new trial due to ineffective assistance of counsel on the basis of her assessment of the witness's credibility. Instead, the appropriate question is what impact the witness might have had on the jury. See Alvarez, 433 Mass. at 103; Tucceri, supra at 411 n.10. We recognize that there are occasions in which a judge or reviewing court must engage in a more nuanced approach to the witness's testimony in addressing this question. See Walker, 443 Mass. 213, 226-228 (2005). Cf. Commonwealth v. Jackson, 468 Mass. 1009, 1010-1011 (2014).[8] Where, as here, the

_____

[8] For example, in Jackson, supra, the court evaluated the impact of previously undisclosed impeachment evidence on the jury, concluding that it was cumulative. In so doing it considered dicta in Tucceri that a motion may be denied if "the undisclosed evidence is cumulative, if it lacks credibility, or if, in an overall assessment, it does not carry a measure of strength in support of the defendant." Tucceri, supra at 414. If however, "the undisclosed evidence is more credible than any other evidence on the same factual issue, and bears directly on a crucial issue before the jury" then the evidence would have

only issue at trial was whom to believe, and the witness was the defendant's sole corroborating witness, the question of the witness's credibility should have been left to the jury.

<u>Order denying motion for new trial reversed</u>.

<u>Judgment reversed</u>.

<u>Verdict set aside</u>.

---

been a "real factor" in the jury's deliberations. <u>Jackson</u>, <u>supra</u> at 1011. Other reported cases have examined this language with respect to physical evidence, such as the blood evidence in <u>Cowels</u>, <u>supra</u> at 623-624, or the photographs in <u>Tucceri</u>, <u>supra</u>, which, by their nature, indisputably cast doubt on other evidence and theories propounded at trial. We are unaware of any case in which <u>Tucceri</u> has been interpreted to permit a judge to evaluate a witness's credibility under the second prong of <u>Safarian</u>. We understand <u>Cowels</u> to caution against too broad an application of this dicta. See <u>Cowels</u>, <u>supra</u> at 623.