APPEALS COURT 
 
 COMMONWEALTH vs. COREY BUCHANNON.[1]

 
 Docket:
 23-P-1098
 
 
 Dates:
 May 6, 2024 - January 28, 2025
 
 
 Present:
 Ditkoff, Englander, & Smyth, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Practice, Criminal, Probation, Revocation of probation, Assistance of counsel, Double jeopardy, Collateral estoppel. Due Process of Law, Probation revocation, Assistance of counsel, Collateral estoppel. Constitutional Law, Assistance of counsel, Double jeopardy. Collateral Estoppel.
 
 

       Indictments found and returned in the Superior Court Department on September 18 and October 1, 2014. 
      A proceeding for revocation of probation was heard by Patrick M. Haggan, J., and a motion for a new hearing, filed on May 31, 2023, was considered by him.
      Elaine Fronhofer for the defendant.
      Hallie White Speight, Assistant District Attorney, for the Commonwealth.
      DITKOFF, J.  The defendant, Corey Buchannon, appeals from an order of a Superior Court judge denying his motion for a new probation violation hearing on the ground of ineffective assistance of counsel.  In defending himself against a notice of probation violation alleging that he committed domestic violence against his girlfriend and left Massachusetts without permission, the defendant testified that he had intentionally destroyed his girlfriend's property and had driven her motor vehicle without a license.  The probation department issued a new notice of violation alleging that the defendant committed the crimes he had admitted to in his testimony, and the judge eventually found that the defendant had violated the terms of his probation in this manner (and not by committing domestic violence or leaving Massachusetts).
      The defendant argues that civil claim preclusion applies to probation violation proceedings and, therefore, probation is required to bring all possible related probation violations in one notice.  We reject that proposition, which is at odds with our rehabilitative model of probation that favors administrative and informal resolution of violations whenever possible and considers a notice of violation to be a last resort.  Accordingly, defense counsel acted effectively in not arguing that claim preclusion prohibited the second notice of violation.
      Complicating matters further is the fact that the judge also found that the defendant violated the terms of his probation by assaulting a correction officer.  The jail's disciplinary board hearing officer, who had access to officer reports not presented to the hearing judge, found the defendant not guilty of that offense in a disciplinary hearing.  Concluding that defense counsel acted ineffectively by not obtaining those reports and by failing to introduce them at the hearing, we vacate the denial of the motion for a new probation violation hearing as to that violation and remand for further proceedings.
      1.  Background.  a.  Underlying offenses.  In 2017, the defendant pleaded guilty to unlawfully carrying a firearm, G. L. c. 269, § 10 (a), as an armed career criminal, G. L. c. 269, § 10G (a); possession of a firearm during the commission of a felony, G. L. c. 265, § 18B; malicious destruction of property over $250, G. L. c. 266, § 127; resisting arrest, G. L. c. 268, § 32B; possession of a stolen motor vehicle, G. L. c. 266, § 28 (a); two counts of armed assault with the intent to murder, G. L. c. 265, § 18 (b); and two counts of assault by means of a dangerous weapon, G. L. c. 265, § 15B (b).  These charges were based on an incident in which multiple shots were fired into a residence in Lowell.
      The plea judge sentenced the defendant to seven years to seven years and one day in State prison on the firearms convictions and on the conviction of possessing a stolen motor vehicle, and to three years of probation to follow on all of the remaining convictions.  As two general conditions of his probation, the defendant was required to obey all local, State, and Federal laws and stay within the Commonwealth of Massachusetts unless he obtained permission to leave.
      b.  Domestic incident.[2]  The defendant was released from prison around December 31, 2021.  On April 2, 2022, the defendant's girlfriend asked him to pick her up in New Hampshire.  The defendant refused, and his girlfriend met him at a birthday party in Lowell.  The girlfriend fell asleep at the party.  Around 2 A.M., the defendant, who did not have a driver's license,[3] drove her motor vehicle without her to the home they shared.
      After waking up at the party, the girlfriend called the defendant and asked, "Where's my F-ing car?"  The defendant, who was writing music in the girlfriend's motor vehicle, became angry and started hitting the car radio, telling her that he "did not give a fuck what happens to [her] fucking car," eventually breaking the radio.  Over the phone, the girlfriend threatened that "she'[d] get [him] ten more years" of incarceration or that she would shoot him in the face.  The defendant, by his own description, then went into the home and "started . . . trashing the house."
      The girlfriend eventually got a ride home and observed "significant damage" to the inside of her home.  The defendant testified that, when the girlfriend got home, he attempted to leave, but she had a knife in her hand and was threatening to commit suicide or become a prostitute if he left.  The girlfriend screamed and cried while "ripping" out his dreadlocks, and she cut the shirt he was wearing with the knife.  While the girlfriend was ripping out his dreadlocks, she was on a recorded phone conversation with two other people, including a friend who was yelling at the girlfriend to "let him go!"  The defendant held her to try to calm her, and then he left for a friend's house.
      The girlfriend called 911.  The girlfriend reported to the police that, after she got home, the defendant "pushed her with an open hand to her face shoving her to the floor."  A responding officer observed "small nicks on her right forearm and a small abrasion by her right elbow."  Officers observed household items damaged and strewn over the floor in almost every room.  The defendant was charged with assault and battery on a family or household member, G. L. c. 265, § 13M (a), in District Court, and he was held in jail following his arraignment.
      c.  Jail incident.  On April 23, 2022, after receiving a report that occupants of the defendant's jail cell might possess narcotics, Correction Officer Joshua Lerman told the defendant that he was going to strip search him.  They both went into a bathroom, while Correction Officer Ryan Connors watched from the door.  Once they entered, the defendant "looked like . . . he was throwing something in the toilet and hitting the flush."  Officer Lerman ordered the defendant to stop flushing the toilet, but the defendant continued.  Officer Lerman "nudged [the defendant] out of the way to get into the toilet to see what was in there, grab it."  The defendant "pushed [Officer Lerman's] left hand away, and he also went into the toilet."  The defendant made further contact with Officer Lerman's hands, either "a pushing or a grabbing."  At that point, Officer Connors came to Officer Lerman's assistance, and they pulled the defendant away from the toilet.  In the toilet they found a piece of notebook paper and a green, leafy substance.
      Officer Connors and another correction officer each filed reports about the incident.  These reports described the defendant as trying to flush something down the toilet, but neither report described the defendant as grabbing or pushing Officer Lerman.  To the contrary, Officer Connors described the defendant as "pulling away from our attempt to gain control of him."  Officer Connors also reported that he was in the bathroom the entire time.  In a jail disciplinary proceeding, a disciplinary board officer found the defendant guilty of possessing a controlled substance and not guilty of "Assault on staff, Resisting and Abusive Language." 
      d.  First probation violation hearing.  On April 11, 2022, a probation officer served the defendant with a notice of violation, alleging that he had violated the terms of his probation by committing assault and battery on a family or household member and by leaving Massachusetts without permission.  A Superior Court judge held a two-day hearing on this notice on April 27 and May 3, 2022.  The defendant's girlfriend appeared and invoked her privilege against self-incrimination.[4]  The probation officer, with the assistance of a prosecutor, attempted to prove the violations through the testimony of the responding police officer and his police report and by playing the girlfriend's 911 call.
      The defendant testified at the violation hearing.  He denied leaving Massachusetts or physically harming the girlfriend.  During direct examination, however, he testified that he repeatedly drove his girlfriend's motor vehicle without a license and that, when his girlfriend "aggravated" him, he hit her motor vehicle, broke the vehicle's radio, and then "started . . . trashing the house" out of anger.  Specifically, he pushed things off the counter and broke them.  He also admitted that, although he had a learner's permit, he did not have a licensed driver with him most of the time when he drove.  See G. L. c. 90, § 8B, first par. ("The holder of a learner's permit who operates a motor vehicle without a duly licensed driver, who is 21 years of age or older, who has at least 1 year of driving experience and who is occupying a seat beside the driver shall be deemed to be operating a motor vehicle without being duly licensed . . .").
      The hearing judge found that the probation department did not prove either of the alleged violations by a preponderance of the evidence.  The judge went on to address "the elephant in the room," that is, the defendant's testimony to committing multiple different crimes.  The judge asked the parties to research how these admissions should be addressed and, specifically, whether the probation department could issue a new notice of violation for these crimes.
      e.  Second probation violation hearing.  On May 24, 2022, a probation officer served the defendant with a second notice of violation.  The new notice alleged that, on April 3, 2022, the defendant committed the uncharged crimes of malicious damage to a motor vehicle, G. L. c. 266, § 28 (a); "[v]andalizing property in the home" (presumably malicious destruction of property, G. L. c. 266, § 127); unlicensed operation of a motor vehicle, G. L. c. 90, §§ 8B, 10; and unauthorized use of a motor vehicle without authority, G. L. c. 90, § 24 (2) (a).  It further alleged that the defendant committed an assault and battery on a correction officer, G. L. c. 127, § 38B (b).[5]  The second violation hearing was held on June 16, 2022.
      The judge admitted in evidence a recording of the testimony from the prior hearing and heard testimony from Officer Lerman.  After the hearing, the judge found that the defendant had violated the terms of his probation by committing new crimes, namely malicious damage to a motor vehicle, vandalizing property in a home, unlicensed operation of a motor vehicle, and assault and battery on a correction officer.[6]  The judge did not find a violation for use of a motor vehicle without authority.  The defendant filed a timely notice of appeal.
      f.  Motion for a new hearing.  Almost one year later, the defendant moved for a new probation violation hearing, arguing that his counsel had provided ineffective assistance.  The motion judge denied the defendant's motion without a hearing.  This appeal followed.[7]
      2.  Standard of review.  "[A] probationer is entitled to the effective assistance of counsel at a probation violation hearing whenever imprisonment may result."  Commonwealth v. Pena, 462 Mass. 183, 188 (2012).  "Although the rules of criminal procedure do not apply to probation violation proceedings, questions of ineffective assistance of counsel involving those proceedings may most appropriately be raised in a motion for a new trial under [Mass. R. Crim. P.] 30 (b)[, as appearing in 435 Mass. 1501 (2001)]."  Commonwealth v. Patton, 458 Mass. 119, 129 (2010).  "The . . . probationer bears the burden of proving ineffectiveness by a showing that counsel's representation was constitutionally inadequate and that the [probationer] suffered prejudice."  Commonwealth v. Vargas, 475 Mass. 86, 95 (2016).  We review the denial of a motion for a new probation violation hearing "for 'a significant error of law or other abuse of discretion.'"  Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 592 (2022), quoting Commonwealth v. Duart, 477 Mass. 630, 634 (2017), cert. denied, 584 U.S. 938 (2018).
      3.  Claim preclusion.  The defendant argues that his counsel was ineffective for failing to raise the defense of claim preclusion as a bar to the second notice of violation.  No case in Massachusetts has applied claim preclusion to probation violation proceedings.  This case will not be the first.
      "Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action."  Kobrin v. Board of Registration in Med., 444 Mass. 837, 843 (2005), quoting O'Neill v. City Manager of Cambridge, 428 Mass. 257, 259 (1998).  "The doctrine . . . is a ramification of the policy considerations that underlie the rule against splitting a cause of action, and is 'based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.'"  Massaro v. Walsh, 71 Mass. App. Ct. 562, 565 (2008), quoting Heacock v. Heacock, 402 Mass. 21, 24 (1988).  Claim preclusion is desirable in civil cases because it "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."  Alicea v. Commonwealth, 466 Mass. 228, 235 (2013), quoting Allen v. McCurry, 449 U.S. 90, 94 (1980).
      Although criminal cases have an analog to claim preclusion, it works quite differently than civil claim preclusion.  In criminal cases, the permissibility of further charges is controlled by principles of double jeopardy and due process.  "The prohibition against double jeopardy protects primarily 'against three specific evils -- a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense."  Commonwealth v. Taylor, 486 Mass. 469, 477 (2020), quoting Commonwealth v. Hebb, 477 Mass. 409, 411-412 (2017).  This prohibition is both broader and narrower than civil claim preclusion.  Broader because, unlike civil claim preclusion, it does not require a final judgment, but only that jeopardy has attached.  See Commonwealth v. Love, 452 Mass. 498, 504 (2008).  But narrower, because it does not apply to any claim that could have been brought in the original charging document, but only to "the same offense."  Taylor, supra.  For example, it is permissible for the Commonwealth to try a defendant for receipt of stolen property and then, after an acquittal on that charge, to try the defendant for larceny of that same property.  See Commonwealth v. Rodriguez, 476 Mass. 367, 373-374 (2017).
      Under principles of due process, in addition to protection from vindicative prosecution, a defendant can invoke collateral estoppel "where the defendant can show that 'there is (1) a common factual issue; (2) a prior determination of that issue in litigation between the same parties; and (3) a showing that the determination was in favor of the party seeking to raise the estoppel bar.'"  Rodriguez, 476 Mass. at 375, quoting Krochta v. Commonwealth, 429 Mass. 711, 715-716 (1999).  Accord Commonwealth v. Williams, 431 Mass. 71, 75-76 (2000).  The Supreme Judicial Court has applied collateral estoppel principles to probation violation proceedings, so long as the two proceedings were "resolved using the same standard of proof."  Kimbroughtillery v. Commonwealth, 471 Mass. 507, 511 (2015).  Accord People v. Quarterman, 202 Cal. App. 4th 1280, 1285 (2012) (applying issue preclusion to probation violation proceedings).  Accordingly, the probation department may not proceed on a notice of violation where a judge has already found that the same violations were not proven in a different probation violation hearing.  Kimbroughtillery, supra at 512.  A criminal prosecutor, however, may charge a defendant for crimes where a judge found no violation of probation based on the same acts.  Krochta, supra at 719-720.
      The reason for this difference between criminal and civil cases is evident.  In ordinary civil cases, principles of claim preclusion and Mass. R. Civ. P. 13 (a), as amended, 423 Mass. 1405 (1996), are designed to encourage -- indeed, to require -- civil litigants to bring in one action all claims that "ar[i]se from the same transaction or series of connected transactions."  Laramie v. Philip Morris USA Inc., 488 Mass. 399, 411 (2021).  Accord Howard v. Boston Water & Sewer Comm'n, 96 Mass. App. Ct. 119, 124 (2019).  For criminal cases, we expect prosecutors to determine "whether the prosecution of the defendant is a wise use of prosecutorial discretion," Commonwealth v. Kardas, 93 Mass. App. Ct. 620, 625 (2018), taking into account scarce public resources, public safety, fairness, and even the desirability of mercy.  Nothing in our system is designed to encourage prosecutors to charge every crime possible for a particular incident.  Rather, we expect and encourage prosecutors to exercise wise restraint and to pursue noncriminal resolutions whenever prudent.
      These concerns apply with even greater force in the context of probation violation hearings, which are initiated by probation officers.  "The principal goals of probation are rehabilitation of the defendant and protection of the public."  Commonwealth v. Lapointe, 435 Mass. 455, 459 (2001).  Probation's goal is to work with probationers to achieve their rehabilitation, to prevent recidivism, and to avoid revocation.  At the time of the proceedings here, the Guidelines for Probation Violation Proceedings in the Superior Court (2016) (Guidelines) stated that a probation officer "may issue a Notice of Surrender[8] for an alleged violation of a general and/or special condition of probation if, in the discretion of the Probation Department, the alleged violation is unlikely to be successfully resolved through an administrative hearing or other intermediate interventions."  Guidelines § 3(C).[9]  The only exceptions were when the probationer had been charged with a new offense by complaint or indictment, when the sentencing judge directed otherwise, or when a statute so required.  Guidelines § 3(B).[10]  Far from requiring a probation officer to notice all possible violations, the Guidelines wisely encouraged probation officers not to notice a violation unless and until attempts to resolve the violation without probation violation proceedings had failed or were likely to fail.
      We can do no less.  Extending civil claim preclusion to probation violation proceedings would undermine the procedures of the Superior Court, Boston Municipal Court, District Court, and Juvenile Court and interfere with the efforts of probation officers throughout the system to address problems informally and to avoid probation violation proceedings whenever possible.  As civil claim preclusion does not apply to probation violation proceedings, defense counsel acted effectively in not raising that as a defense.  See Commonwealth v. Scott, 463 Mass. 561, 578 (2012).
      4.  Failure to investigate and to introduce reports.  The defendant also argues that counsel was ineffective in failing to investigate the jail assault incident and to introduce reports that would have been rebutted the assault allegations.  In a criminal trial, defense counsel "has a duty to conduct an independent investigation of the facts."  Commonwealth v. Shepherd, 493 Mass. 512, 536 (2024).  "'[S]trategic choices made after less than complete investigation are reasonable' only to the extent that 'reasonable professional judgments support the limitations on the investigation.'"  Commonwealth v. Hampton, 88 Mass. App. Ct. 162, 167 (2015), quoting Wiggins v. Smith, 539 U.S. 510, 533 (2003).  "A strategic decision by trial counsel only constitutes ineffective assistance of counsel if it 'was manifestly unreasonable when made.'"  Commonwealth v. Nordstrom, 100 Mass. App. Ct. 493, 502 (2021), quoting Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015), S.C., 478 Mass. 189 (2017).
      Here, Officer Lerman testified that the defendant pushed his left hand when the officer was trying to retrieve the marijuana from the toilet.  Two other correction officers who witnessed the incident wrote reports about the incident but did not describe the defendant's pushing Officer Lerman's hand.  Moreover, the jail's disciplinary board officer found the defendant not guilty of assault, resisting, and using abusive language.  The defendant averred that he told defense counsel about these other witnesses and suggested contacting them.[11]
      Here, counsel did not seek to introduce, and perhaps never obtained or even sought, the reports of the other two correction officers.  The hearing judge admitted in evidence the jail's disciplinary report concerning the incident and presumably would have admitted the correction officers' reports as reliable hearsay, even in the absence of live testimony by the officers.  See Commonwealth v. Foster, 77 Mass. App. Ct. 444, 449 (2010).  Failing to introduce these reports, therefore, was conduct that fell "measurably below that of an ordinary fallible attorney."  Commonwealth v. Humphries, 465 Mass. 762, 772 (2013).  Where, based on evidence including these reports, the jail's disciplinary board officer found the defendant not guilty of assault,[12] their absence deprived the defendant of a substantial ground of defense to this violation.  See Commonwealth v. Phinney, 446 Mass. 155, 162-163, 165 (2006), S.C. 448 Mass. 621 (2007) (defense counsel deprived defendant of substantial ground of defense by failing to read police reports with third-party culprit evidence).
      Although the finding of a violation based on the assault and battery cannot stand without a new probation violation hearing, we recognize the complexity of the task facing the hearing judge on remand.  The judge found separate violations, and we discern no error in the judge's finding that the defendant violated the terms of his probation by committing malicious destruction of property and by operating a motor vehicle without being licensed.  We cannot simply affirm on that basis, however, because the judge did not make it "clear that he was basing the disposition on the fact that the defendant violated his probation (and not on the nature of the violations)," Commonwealth v. Hamilton, 95 Mass. App. Ct. 782, 790 (2019), nor can we otherwise "be confident that [the judge's disposition] was not substantially influenced" by the assault and battery violation, Commonwealth v. Marcus M., 92 Mass. App. Ct. 1, 6 (2017).  Accord Commonwealth v. King, 96 Mass. App. Ct. 703, 712 (2019).  On the other hand, if the hearing judge determines that the disposition would have been the same without the assault and battery violation, the judge need not disturb the disposition.[13]
      5.  Conclusion.  So much of the judge's order denying a new probation violation hearing as relates to the finding of a violation of probation for assault and battery on a correction officer is vacated and remanded for further proceedings consistent with this opinion.  That order is otherwise affirmed, as is the finding that the defendant violated the terms of his probation by vandalizing property in a home, maliciously damaging a motor vehicle, and operating a motor vehicle without a license.
                                          
 
So ordered. 
footnotes

          [1] The parties agree that the defendant's last name is actually "Buchannan."  "As is our custom, we spell the defendant's name as it appears in the indictments."  Commonwealth v. Leoner-Aguirre, 94 Mass. App. Ct. 581, 581 n.1 (2018).
          [2] We recount the version of events that the hearing judge credited, which essentially tracks the defendant's testimony.
           [3] The defendant had a learner's permit, which did not permit him to drive except under the supervision of a licensed driver in the motor vehicle.
      [4] The girlfriend also eventually invoked her privilege against self-incrimination in the criminal prosecution, and the Commonwealth dismissed the new criminal charge.
      [5] The second notice of violation also included alleged violations for "[p]ossession of Class D substance in a corrections facility" and tampering with evidence, G. L. c. 268, § 13E (b).  These allegations were dropped at the hearing.
          [6] The hearing judge sentenced the defendant to eighteen months in a house of correction for resisting arrest and a split sentence of two and one-half years in a house of correction with eighteen months to serve for malicious destruction of property.  On the other four charges, the judge reprobated the defendant for two years after release with additional conditions.
               [7] The defendant raises no other challenge to the findings of violation or the disposition.
          [8] Although the 2016 Guidelines used the outdated term "notice of surrender," the documents filed by the probation officer in the instant case were titled "notice of alleged probation violation and hearing."  The current guidelines, like the District/Municipal Courts Rules for Probation Violation Proceedings 3, 4, and Juvenile Court Standing Order 1-17(III), (IV) (2017), use the modern terminology of "notice of alleged probation violation and hearing."  Guidelines for Probation Violation Proceedings in the Superior Court § 2 (2024).
               [9] At the first violation hearing here, the prosecutor suggested that the probation department had a policy that discouraged bringing notices of violation for uncharged criminal acts.
               [10] These principles are substantially similar to those in District/Municipal Courts Rules for Probation Violation Proceedings 3(b)(i), 3(c)(i), and 4(b), and in Juvenile Court Standing Order 1-17(III)(b)(i), (c)(i), (IV)(b) (2017).  In 2024, the Superior Court modified its guidelines to delete all mandatory notices of violation except as required by G. L. c. 209A, § 7.  See Guidelines for Probation Violation Proceedings in the Superior Court § 3(a) (2024).
          [11] There is no affidavit from hearing counsel, but this is not a case where the defendant failed to provide "sufficient explanation for the absence of such an affidavit."  Commonwealth v. Miller, 101 Mass. App. Ct. 344, 345 (2022).  Appellate counsel recounted her communications with hearing counsel and explained that she twice sent e-mail messages to hearing counsel to inquire whether she had sought the reports from the other correction officers or more information about the jail disciplinary process.  Appellate counsel received no response.
               [12] In State prison, an inmate disciplinary report must be proved by a preponderance of the evidence.  103 Code Mass. Regs. § 430.16(1) (2019).  The record does not reflect whether the Middlesex jail uses the same standard.
          [13] Similarly, we recognize that the defendant was subsequently found in violation of the terms of his probation for committing an unrelated armed home invasion during the original probationary period, and the defendant has appealed.  "No party argues that this matter is moot, and it has not been demonstrated to us" that a change in the disposition of the instant probation violations will not affect the defendant's status.  Ralph v. Civil Serv. Comm'n, 100 Mass. App. Ct. 199, 201 n.4 (2021).  As the question has not been briefed to us, we do not intend to foreclose the possibility that the hearing judge will determine on remand that the question is now moot.